UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| COURTNEY CARTER-SPAGNOLO, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:20-cv-00092 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| WESTERN STATE HOSPITAL, | ) ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

On August 17, 2021, following a hearing on Plaintiff Dr. Courtney Carter-Spagnolo's

Motion to Stay, the court entered an order directing Plaintiff to file, within 14 days, one of: (1)

an opposition to Defendant Western State Hospital's ("WSH") motion to dismiss; (2) a

motion for leave to file a second amended complaint; or (3) a statement of her intent to dismiss

her case without prejudice. (Order, Aug. 17, 2021 [ECF No. 56].)[1]

The court received a timely filing from Dr. Carter-Spagnolo on August 31. (ECF No.

58.) The court construes this filing as both her second amended complaint *and* as a motion for

---

[1] The August 17, 2021 hearing was the result of Dr. Carter-Spagnolo's reluctance to litigate her case *pro se*. WSH filed its pending motion to dismiss on May 10. (ECF No. 24.) Three days after that, Plaintiff's counsel moved to withdraw, informing the court that Dr. Carter-Spagnolo had terminated their services. (ECF No. 27.) On June 21, without having filed an opposition to WHS's motion, Dr. Carter-Spagnolo moved the court for a 30-day extension of time to obtain new counsel. (ECF No. 37.) She followed up four days later with a motion to stay the case. (ECF No. 42.) Magistrate Judge Hoppe granted the motion for an extension (see ECF No. 40) and the court later suspended the litigation and applicable deadlines, including Dr. Carter-Spagnolo's deadline to respond to the motion to dismiss, to give her additional time to retain new counsel, (see ECF No. 45). By August 17, over three months after Defendant had filed its motion to dismiss, it was apparent that Plaintiff had been unable to retain an attorney, despite the court having suspended the litigation for *two months*. Accordingly, the primary purpose of the August 17 hearing was to advise Plaintiff that she would need to decide whether to prosecute her case *pro se* (or not).

leave to file a second amended complaint.[2] WSH does not oppose Dr. Carter-Spagnolo's motion for leave to file a second amended complaint. (ECF No. 60.) Instead, WSH requests leave to file a new 12(b)(6) motion. (*Id.*)

## I.    BACKGROUND

Dr. Carter-Spagnolo's second amended complaint raises two causes of action under Title VII. She alleges that WSH, her former employer, discriminated against her on the basis of her race and retaliated against her for speaking out about WSH's discriminatory treatment of patients. (*See* Second Am. Compl. & Mot. for Leave to File Second Am. Compl. [hereinafter "Second Am. Compl."], Aug. 31, 2021 [ECF No. 58 at 1] ("Plaintiff was treated in a discriminatory way at Western State Hospital. Plaintiff also faced retaliation after she spoke out about the discriminatory way in which black patients were being diagnosed and medicated.").)

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

---

[2] The court construes Dr. Carter-Spagnolo's filing as a second amended complaint. *See* Fed. R. Civ. P. 8(a) (requiring complaints in cases where "the court already has jurisdiction" to include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought"). The court's prior order explicitly required that Dr. Carter-Spagnolo attach a second amended complaint to any motion for leave to file a second amended complaint. (Order, Aug. 17, 2021 [ECF No. 56 at 1–2 & n.2] ("If Plaintiff files a motion for leave to file a second amended complaint, she must attach her proposed second amended complaint to her motion.").) If the court hadn't construed her filing as a second amended complaint it would have to dismiss her complaint for failure to comply with a court order. *See* Fed. R. Civ. P. 41(b). Note, too, that Dr. Carter-Spagnolo's filing cannot plausibly be construed as either of the other two filings the court permitted her to submit. It is plainly not an opposition to WSH's motion to dismiss, nor is it a statement notifying the court of her intention to voluntarily dismiss her case without prejudice. (*See id.* at 1–2.)

*v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

WSH's motion to dismiss the amended complaint remains pending. (*See* ECF No. 24.) District courts generally deny as moot pending motions to dismiss upon the filing of an amended complaint. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). But there is an exception to this general rule. District courts may apply a pending motion to dismiss to an amended complaint if the amended complaint has not addressed the pending motion's basis for dismissal. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) (per curiam); *see also* Wright & Miller, Federal Practice & Procedure § 1476 (3d ed. 2021) ("If some of the defects raised in the original motion [to dismiss] remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."). This approach conserves both the court's resources and the Defendant's resources. *See Pettaway*, 955 F.3d at 303. The exception applies here.

### III.   ANALYSIS

WSH's motion to dismiss argues, in part, that Dr. Carter-Spagnolo's claims were not exhausted. (Mem. in Supp. of Def.'s Mot. to Dismiss Pl.'s First Am. Compl. [ECF No. 25 at 4–6].) Before filing in federal court, Title VII plaintiffs must exhaust their claims by filing a

timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(f)(1); *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009). To be timely, the plaintiff must submit charges to the EEOC no later than 300 days after the allegedly discriminatory or retaliatory action. 42 U.S.C. § 2000e-5(e)(1); *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014). Failure to file timely may result in a loss of the ability to sue in federal court. *See Hentosh*, 767 F.3d at 417.

Dr. Carter-Spagnolo failed to file her charge of discrimination timely at the EEOC. WSH fired Dr. Carter-Spagnolo on March 22, 2019. (Am. Compl. ¶ 23 [ECF No. 20].) But she did not file her EEOC charge until April 15, 2020—390 days after the allegedly retaliatory action. (*Id.* ¶ 2.) On the face of her complaint, Dr. Carter-Spagnolo's EEOC charge was untimely, so her claims have not been exhausted.

Equitable doctrines, however, may excuse a plaintiff's delay in filing. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). Alternatively, "[e]quitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *Id.*

But these exceptions to the 300-day rule are not met here. Dr. Carter-Spagnolo's filings do not allege anything that WSH did to cause her delay and so provide no reason why WSH should be estopped from raising this timeliness defense. *See Price v. Litton Bus. Sys.*, 694 F.2d 963, 965 (4th Cir. 1982).

Instead, Plaintiff offers two reasons why the deadline ought to be equitably tolled. First, she attributes her delay to unsound legal advice. Second, she suggests that WSH told her they were planning on investigating the incidents, which led her to put off taking any action.

In part, Dr. Carter-Spagnolo blames her delay in filing on a legal services agency with whom she discussed her lawsuit. (*See* Second Am. Compl. at 2 ("Plaintiff's lawyer informed her that she only had 180 days to file a [charge] against Western State Hospital. Plaintiff was therefore misled by legal counsel.").) But most courts to address the question have held that an attorney's failure to advise a Title VII plaintiff of a filing deadline does not justify equitable tolling. *See, e.g.*, *Porter v. New Age Servs. Corp.*, 463 Fed. App'x 582, 584 (7th Cir. 2012) ("A lawyer's ineptitude does not support equitable tolling."); *Baker v. Off. Depot, Inc.*, 115 Fed. App'x 574, 577–78 (3d Cir. 2004) ("counsel's inadvertence" did not warrant equitable tolling because it was mere "garden[-]variety neglect"). Bad legal advice does not warrant equitable tolling.

Second, Dr. Carter-Spagnolo suggests that she put off the preparation of her EEOC charge because WSH told her it would be investigating the relevant incidents itself. (*See* Second Am. Compl. at 1 ("Plaintiff was subjected to a biased investigation in which she was only allowed to speak to the investigator for about 5 to 10 minutes."); Am. Compl. ¶ 24 [ECF No. 20] ("[F]ollowing her termination from Western State Hospital, Dr. Carter-Spagnolo spoke with WSH EEOC Representative Michael Coss about filing a complaint because she believed her termination was based on race and retaliation.").) Again, most of the relevant precedent rejects this argument. An employer's decision to investigate the allegedly discriminatory or retaliatory incidents—and to tell the employee that it is doing so—does not equitably toll the employee's deadline for filing an EEOC charge. *Del. State Coll. v. Ricks*, 449 U.S. 250, 261

(1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods."); *see also Belton v. City of Charlotte*, 175 F. App'x 641, 654 (4th Cir. 2006) (per curiam) ("The [employer's] promise to investigate does not by itself qualify as deliberate deception."). Dr. Carter-Spagnolo is not entitled to equitable tolling, and her EEOC charge was not timely in relation to her termination.

But Dr. Carter-Spagnolo's second amended complaint raises an additional allegation that has more to do with the nature of the alleged retaliation than it does with timeliness. She claims that WSH retaliated against her twice, once when it originally fired her, and again when it filed its report of patient abuse/neglect with the Virginia Board of Medicine. (*See* Second Am. Compl. at 1 ("Not only did Western State Hospital engage in the adverse act of unfairly terminating the plaintiff, but they also unfairly reported behaviors to the [B]oard of [M]edicine that were false, in an effort to label the plaintiff as an "abuser.").) WSH filed its report against Dr. Carter-Spagnolo on October 5, 2019. (Am. Compl. ¶ 27.) Dr. Carter-Spagnolo filed her EEOC charge on April 15, 2020—within 300 days of WSH filing its report. (EEOC Charge [ECF No. 10-2].) So, she alleges in her second amended complaint, her EEOC charge was filed timely as to this retaliatory act.

The controlling question is whether WSH's report to the Virginia Board of Medicine was a separate retaliatory action or an inevitable consequence of its decision to fire Dr. Carter-Spagnolo. The Supreme Court distinguishes between acts of discrimination or retaliation and the inevitable consequences of those actions. *See Ricks*, 449 U.S. at 256–58. If WSH's report was the former, as Dr. Carter-Spagnolo alleges, she would have a 300-day window to file a

timely EEOC charge. But if it is the latter, then her EEOC charge was not timely.

WSH's filing with the Virginia Board of Medicine was not a discrete act of retaliation. "The proper focus is upon the time of the discriminatory act[], not upon the time at which the consequences of the acts became most painful." *Ricks*, 449 U.S. at 258. Consider *Ricks*, which involved a tenure-track faculty member who alleged discrimination on the basis of race. *Id.* at 252. Ricks had been at Delaware State College for three years when the tenure committee informed him that he would not receive tenure. *Id.* In line with university policy, Ricks received a one-year contract through the end of the next academic year. *Id.* at 253–54. Ricks signed the contract, and then he waited another seven months before filing an EEOC charge alleging discrimination based on his national origin. *Id.* His EEOC charge was timely in relation to his ultimate termination, but untimely in relation to his initial denial of tenure. *Id.* at 257–59.

The Supreme Court held that the proper point from which to measure the timeliness of an EEOC charge is at the time of the original discriminatory action. *Id.* at 259. This holding resolves Dr. Carter-Spagnolo's last contention. As in *Ricks*, "the only alleged [retaliation] occurred—and the filing limitations periods therefore commenced—at the time [the firing] was made and communicated to [Dr. Carter-Spagnolo]." *Id.* at 258. For the limitations period to have begun running with the filing of the report, Dr. Carter-Spagnolo needed to allege that her report was handled differently than someone else's. *See id.* "But no suggestion has been made that [Dr. Carter-Spagnolo] was treated differently from other" employees that WSH has reported to the Virginia Medical Board. *Id.*

And to be clear, WSH had no choice but to submit the report to Virginia's Medical Board. Virginia law requires hospitals to alert the state Medical Board of any disciplinary action

against "health professionals" within 30 days of the professional receiving notice of the discipline. *See* Va. Code Ann. § 54.1-2400.6(A)(4). Dr. Carter-Spagnolo suggests the WSH's report about her to the Board was untimely, because it happened outside the 30-day timeline. (*See* Am. Compl. ¶ 26 [ECF No. 20].) But that is a matter between the Board and WSH. Without alleging that WSH timely filed (or perhaps refused to file) reports against her similarly-situated colleagues, Dr. Carter-Spagnolo cannot state a retaliation claim under Title VII. WSH's filing of the report was the "delayed, but inevitable, consequence" of an allegedly retaliatory act (her firing), not a retaliatory act itself. *Ricks*, 449 U.S. at 257–58; *see also Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016) (characterizing *Ricks* as setting out "the standard rule that a limitations period begins to run after a claim accrues, not after an inevitable consequence of the claim"). As such, it doesn't matter that Dr. Carter-Spagnolo filed her EEOC charge within 300 days of WSH's submission to the Virginia Medical Board; she failed to file her EEOC charge within 300 days of her firing. Because WSH has established that her EEOC charge was untimely, the court must dismiss her complaint. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850 (2019).

Before concluding, it is worth flagging two related doctrines not implicated by Dr. Carter-Spagnolo's second amended complaint. She is not alleging that her EEOC charge, which was timely as to WSH's report, is thus also timely as to her firing. (*See* Second Am. Compl. at 1 (referring to WSH's Medical Board report as "[WSH's] 2nd retaliatory act against the plaintiff.") In any event, the Supreme Court has rejected exactly such contentions. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete [retaliatory] acts are not actionable if time barred, even when they are related to acts alleged in timely filed

charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

Nor can her second amended complaint be construed as alleging that WSH was a hostile workplace under Title VII.[3] "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. But nothing in the record indicates that Dr. Carter-Spagnolo is bringing a hostile work environment claim. "To demonstrate . . . a racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). Her counseled amended complaint does not mention a hostile work environment claim. (*See generally* Am. Compl.) And neither her second amended complaint nor her EEOC charge suggest that WSH's allegedly unlawful treatment predated, or was unrelated to, her decision to speak out about her colleagues allegedly discriminatory treatment of their Black patients. (*See generally* Second Am. Compl.; EEOC Charge.) Those assertions lend themselves to a retaliation claim, not a hostile-

---

[3] At most, Dr. Carter-Spagnolo's filings could be construed as a claim of racial discrimination. (*See* Second Am. Compl. at 1 ("Plaintiff was treated in a discriminatory way at Western State Hospital."); Am. Compl. ¶ 30–38 (alleging racial discrimination); EEOC Charge (indicating that Dr. Carter-Spagnolo checked the box marked "race" when she filed her EEOC charge).) Even so, part of her prima facie case for racial discrimination in the enforcement of employee disciplinary measures under Title VII requires her to allege that "other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). Because her filings never mention a similarly-situated comparator, then even to the extent that she is bringing a racial-discrimination claim, she has failed to present a claim upon which relief can be granted pursuant to Rule 12(b)(6).

work-environment claim.

## IV.   CONCLUSION

In sum, without equitable tolling, Dr. Carter-Spagnolo's EEOC charge was untimely with respect to her termination. The only act the EEOC charge was timely in relation to, WSH's filing of its report to the Virginia Medical Board, was not retaliatory. Because her EEOC charge was untimely in relation to the only potentially retaliatory action she alleged, Dr. Carter-Spagnolo has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *cf. Hentosh*, 767 F.3d at 415–18. Thus, the court dismisses her second amended complaint with prejudice.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of September, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE